UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONNA YOUNG, GERALD YOUNG, husband and wife, and as guardians for minor child J.Y,

Plaintiffs,

v.

UNITED STATES OF AMERICA,

Defendant.

CASE NO. C11-6043 BHS

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter comes before the Court on Defendant United States of America's ("United States" or "Government") Motion to Dismiss (Dkt. 9). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On December 21, 2011, Plaintiffs Donna Young, Gerald Young, and minor child J.Y. (collectively, "Youngs") filed a complaint in this Court alleging personal injury as the result of the National Park Service's ("NPS") negligence. Dkt. 1 at 4-5.

ORDER - 1

On January 24, 2013, the Government filed a motion to dismiss. Dkt. 9. On February 11, 2013, the Youngs filed a response. Dkt. 17. On February 15, 2013, the Government filed a reply. Dkt. 20. On February 19, 2013, the Youngs filed a surreply to the motion to dismiss. Dkt. 23. On February 27, 2013 this Court entered an order staying discovery pending the outcome of this motion to dismiss. Dkt. 24.

## II. FACTUAL BACKGROUND

**A.   The Park and its Policies**

Mount Rainier National Park was established in 1899 as the fifth national park in the United States and encompasses over 235,000 acres of land or 368 square miles. Dkt. 11, Declaration of Randy King, ¶ 4. Paradise is an area located at an elevation of approximately 5,400 feet on the south slope of Mt. Rainier in the park. *Id*. ¶ 6. Of the 1.5 million to 2 million people who visit the park each year, Paradise receives the most visitors and the most snowfall, averaging approximately 641 inches of snow a year. *Id*. ¶ 7.

In 2008, Jackson Visitor Center ("JVC") was rebuilt at Paradise and is a popular location for visitors at Mt. Rainer. *Id*. ¶ 12. During construction of the JVC at Paradise, the NPS installed a new transformer ("Transformer") about 150 feet south of the JVC, across the street, and located in an area that is snow covered generally from November through mid-July. *Id*. ¶ 13.

Mr. King declares that the "mission of the NPS is to provide public access and use in one of the snowiest places on the planet while at the same time preserve and maintain

the historic culture and beauty of this national landmark." *Id*. ¶ 21.  Under the Organic Act, 16 U.S.C. § 1, the NPS is charged with

> Promot[ing] and regulat[ing] the use of . . . national parks . . . by such means and measures as conform to the fundamental purpose of the said parks, . . . which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

To implement this statutory directive, the NPS has adopted various policies and internal operating procedures, including those related to public safety and signage.  The 2006 NPS Management Policies ("Management Policies" or "the Policies") provides, with respect to safety:

> The Service will strive to identify and prevent injuries from recognizable threats to the safety and health of persons and to the protection of property by applying nationally accepted codes, standards, engineering principles and the guidance contained in Director's Orders . . . .  When practicable and consistent with congressionally designated purposes and mandates, the Service will reduce or remove known hazards and apply other appropriate measures, including closures, guarding, *signing*, or other forms of education.  In doing so, the Services' preferred actions will be those that have the least impact on park resources and values. . . . These management policies do not impose park-specific visitor safety prescriptions.  The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing.

Dkt. 10-1 at 31; (*see* 2006 Management Policies, § 8.2.5.1 (emphasis added)).

In 1998, NPS published a Sign Manual in 1988 which requires that "[w]henever there is a hazard that might reasonably be expected to result in injury to Service personnel or the visiting public, signs warning of the hazard must be installed."  Dkt. 19, declaration of Wayne Mitchell, Exh. 10.

ORDER - 3

### B. Donna Young's Injury

The Youngs bring their claim against the United States under the Federal Tort Claims Act ("FTCA"). They allege the NPS negligently failed to discover, warn, protect, and/or eliminate hazards in the area of the JVC at Mount Rainier National Park. Dkt. 1 at 4-5. The Youngs assert that Donna Young was walking on a snow field south of the visitor center when, without warning, the snow collapsed under her feet and she fell into a hole, landing on a power transformer. *Id*. at 2. They further allege that the hole was created by heat from the transformer melting a cavern in the snow. *Id*. As a result of the fall, the Youngs allege that Donna Young sustained severe injuries and had to be rescued by park personnel and transported by helicopter to Harborview Medical Center. *Id*.

### III. DISCUSSION

### A. Motion to Dismiss – Standard

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F. Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. § 1331 (federal question jurisdiction) and § 1346 (United States as a defendant).

When considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual

disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F. 2d 1375, 1379 (9th Cir. 1983).

**B.    United States' Motion to Dismiss – FTCA and the Discretionary Function Exception**

The United States, as sovereign, is immune from suit unless it consents to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995). The FTCA is a limited waiver of sovereign immunity, rendering the United States liable for certain torts of federal employees. *See* 28 U.S.C. § 1346(b). The FTCA provides, in pertinent part:

> Subject to the provisions of Chapter 171 of this title, the district courts, . . . , shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Among the exceptions to the FTCA waiver of sovereign immunity is the "discretionary function exception." It excludes:

> [a]ny [§ 1346] claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

1   28 U.S.C. § 2680(a).  The Government argues NPS's actions fall within the discretionary

2   function exception, and therefore this action should be dismissed for lack of subject

3   matter jurisdiction.  Dkt. 9 at 3.

4   　　　"The discretionary function exception insulates certain governmental decision-

5   making from judicial second guessing of legislative and administrative decisions

6   grounded in social, economic, and political policy through the medium of an action in

7   tort." *Myers v. U.S.*, 652 F.3d 1021, 1028 (9th Cir. 2011) (internal citations omitted).

8   "The government bears the burden of proving that the discretionary function exception

9   applies." *Id.*  Additionally, "[t]he FTCA was created by Congress with the intent to

10  compensate individuals harmed by government negligence, and as a remedial statute, it

11  should be construed liberally, and its exemptions should be read narrowly." *Terbush v.*

12  *United States*, 516 F.3d 1125, 1135 (9th Cir. 2008).

13  　　　A two-step test is used to determine whether the discretionary function exception

14  applies. *Id.* at 1129 (*citing Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988)).  In

15  the first step, the court determines "whether challenged actions involve an element of

16  judgment or choice." *Id.* (*quoting Berkovitz,* 486 U.S. at 536).  If the challenged actions

17  involve an element of judgment or choice, then the court turns to the second step in the

18  test. *Id.*  The second step requires the court to decide "'whether that judgment is of the

19  kind that the discretionary function exception was designed to shield,' namely, 'only

20  governmental actions and decisions based on considerations of public policy.'" *Id.* at

21  1130 (*quoting Berkovitz,* 486 U.S. at 536-37).  The exception applies even if the decision

22  is an abuse of discretion. *Id.*  Each of the steps will be examined below.

### 1. Conduct at Issue

Before engaging in the two-part discretionary function analysis, the Court must identify the challenged conduct. *Merando v. U.S.*, 517 F.3d 160, 165 (2008). The Youngs' complaint alleges that:

> Employees of the Park Service had a duty to visitors to maintain safe premises in the area of the Visitor Center. Employees of the Park Service had a duty to warn visitors in the area of the Visitor Center of known hazards. Employees of the Park Service had a duty to protect visitors in the area of the Visitor Center from known hazards.

Dkt. 1 at 4. Accordingly, the conduct at issue is the NPS's maintenance of the Park, decisions to identify and warn visitors from hazards, and the protection of visitors from hazards.

### 2. Whether Challenged Actions Involve an Element of Judgment or Choice

In the first step, the court determines "whether challenged actions involve an element of judgment or choice." *Id*. at 1130 (*quoting Berkovitz*, 486 U.S. at 536-37). Under this step, the "nature of the conduct, rather than the status of the actor" is examined. *Id.* "The discretionary element is not met where 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Id.* (*quoting Berkovitz*, 486 U.S. at 536). The inquiry ends if there is such a statute or policy directing mandatory and specific action because there can be no element of discretion when an employee "has no right option but to adhere to the directive." *Id.*

After reviewing the applicable policies and guides, the Court concludes that NPS officials at Mount Rainier National Park are vested with broad discretion regarding the

1  manner in which to warn the public of dangerous conditions in the park. For example,

2  the management policies explicitly allocate decisions to superintendents:

3  > These management policies do not impose park-specific visitor safety prescriptions. The means by which public safety concerns are to be addressed is left to the discretion of superintendents and other decision-makers at the park level who must work within the limits of funding and staffing.

6  2006 Management Policies, § 8.2.5.1. No matter how one reads this policy, it does not

7  specifically prescribe a course of action for an employee to follow.

8  With regard to the Sign Manual, the first prong of the discretionary function test

9  requires the statute, regulation or policy to be both *specific* and *mandatory*. The manual

10  was intended to be used by "Park Managers . . . as a *guide* in the designing and order of

11  all vehicular and pedestrian traffic control signing and other pertinent devices." Dkt. 19-

12  3 at 5 (emphasis added). Because the NPS's Sign Manual was intended to serve as a

13  guide and lacks specificity, it cannot be characterized as a mandatory policy. For this

14  reason, the Sign Manual does not strip local NPS officials of their discretion to discover,

15  warn visitors of, and eliminate hazards at Mount Rainier National Park.

16  Having concluded that no statute, regulation, or policy mandates specific action by

17  NPS officials with respect to discovering, warning visitors of, or eliminating hazards at

18  Mount Rainier National Park, this Court must continue to the second step of the

19  discretionary function exception analysis. *Myers*, 652 F.3d at 1028.

### 3. Whether the Judgment is of the Kind that the Discretionary Function Exception was Designed to Shield – Decisions Based on Considerations of Public Policy

The second step requires the court to determine whether the discretionary judgment afforded to NPS is "of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Only those decisions "susceptible to policy analysis" are protected by the exception. *United States v. Gaubert*, 499 U.S. 315, 325 (1991). In this context, public policy has been understood to include decisions "grounded in social, economic, or political policy." *Terbush*, 516 F.3d at 1130 (*quoting United States v. Varig*, 467 U.S. 797, 814 (1984)). The Government bears the burden to provide support in the record to show that *the decisions taken* are susceptible to policy analysis in order for the discretionary function exception to apply. *Terbush*, 516 F.3d at 1134-1135 (emphasis added).

In reviewing the extensive and varied case law in this circuit and elsewhere, the Court concludes that decisions regarding hazards of a general nature within the park, whether known or unknown, are subject to the discretionary function exception. Even if no specific decision was made, such decisions are "susceptible" to public policy analysis. While there is some case law in support of the Youngs' position (*see, e.g., Summers v. United States*, 905 F.2d 1212 (9th Cir. 1990)), the great majority of case law supports the position that claims such as the Youngs' are subject to the exception stripping the Court of jurisdiction to hear the claims (*see, e.g., Terbush v. United States*, 516 F.3d 1125, 1135–1140 (9th Cir. 2008)). While such a blanket protection for claims of negligence seems to be inconsistent with the "overreaching purposes of the FTCA" (*see, e.g., Bailey*

1 | *v. United States*, 623 F.3d 855, 866–870 (9th Cir. 2012) (B. Fletcher, dissent)), the

2 | binding case law shall be applied to the Youngs' claims.  Therefore, the Court grants the

3 | Government's motion to dismiss because the conduct challenged by the Youngs is

4 | susceptible to decisions based on public policy and the discretionary function exception

5 | applies.

## IV. ORDER

Therefore, it is hereby **ORDERED** that the Government's motion to dismiss is **GRANTED**, and this case is closed.

Dated this 25th day of March, 2013.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge